United States District Court
Southern District of Texas
**ENTERED**

January 22, 2019

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FRANCISCO GONZALEZ,               §
                                  §
        Plaintiff,                §
                                  §
v.                                §        Civil Action No. H-16-2823
                                  §
FLUOR CORPORATION,                §
                                  §
        Defendant.                §

## MEMORANDUM AND RECOMMENDATION

Pending before the court is Defendant Fluor Daniel Services Corporation's ("FDSC")[1] Motion for Summary Judgment (Doc. 37), Plaintiff's Motion for Injunctive Relief (Doc. 39) and the responses filed thereto. For the reasons stated below, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment be **GRANTED** and that Plaintiff's Motion for Injunctive Relief be **DENIED**.

## I.  Case Background

### A.  Factual Background

Plaintiff Francisco Gonzalez ("Gonzalez" or "Plaintiff") was hired by FDSC as a pipefitter on March 3, 2015.[2] As a new hire, Gonzalez received training on FDSC's policies and procedures, including FDSC's Equal Employment Opportunity and Employee

---

[1]      Although the lawsuit identifies "Fluor Corporation" as the defendant, FDSC was Plaintiff's employer and, therefore, is the proper party to this suit.

[2]      See Ex. 37-1, Ex. 1 to Def.'s Mot. for Summ. J., Aff. of Roderick Shannon ("Shannon") p.3.

Discipline Policies and Rules of Conduct.[3] Gonzalez's first day on the job site was Tuesday, March 10, 2015.[4]  On Friday, March 13, 2015, Gonzalez arrived late to work and missed part of the work safety meeting.[5]  Later that day, Gonzalez engaged in arguments with co-workers and supervisors.[6]  When Gonzalez demanded to talk with Human Resources, the Construction Manager, Richard Aycock ("Aycock"), was called to intervene in the dispute between Gonzalez, his foreman and a job superintendent.[7]  Aycock asked Gonzalez what the problem was and told Gonzalez it was unacceptable for Gonzalez to leave his work area without notice.[8]  Gonzalez refused to talk with Aycock, appeared ill, and started taking off his protective gear.  Aycock asked Gonzalez to continue the

---

[3]     See id.  Gonzalez admitted receiving training on those topics.  See Doc. 37-14, Ex. 2 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 83-84.

[4]     See Doc. 37-1, Ex. 1 to Def.'s Mot. for Summ. J., Aff. of Shannon p. 3.

[5]     See id.

[6]     See Doc. 37-15, Ex. 3 to Def.'s Mot. for Summ. J., Pl.'s Diary p. 3. In the diary, Gonzalez admits that he exchanged words with his supervisor over another co-worker's weld, left the area without permission, was told by a supervisor not to let helpers make fits, and annoyed a coworker by watching him weld.  Id.  This behavior culminated in his coworkers telling Gonzalez that they did not want to work with him anymore.  Id.  Gonzalez, believing there was a double-standard in the workplace, demanded to see the foreman.  Id.  Gonzalez suggested to the foreman that an Occupational Safety Health Act inspection might be necessary and the foreman took Gonzalez to the Construction Manager, Richard Aycock.  Id.

[7]     See Doc. 37-9, Ex. 1-H to Def.'s Mot. for Summ. J., Statement of Jimmy Anderson.

[8]     See Doc. 37-14, Ex. 2 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 60-62.

conversation in the office, but Gonzalez refused.[9]  Aycock went to Human Resources and told Shannon that he wanted to terminate Gonzalez's employment because Gonzalez had been insubordinate and refused to follow his directions.[10]   Shannon asked Gonzalez to accompany Shannon to his office.[11]

In the office, Gonzalez informed Shannon that Gonzalez was experiencing heel pain which traveled up to his neck and that he treated the heel pain by drinking fresh cactus juice.[12]  Gonzalez stated that Shannon advised Gonzalez to see a doctor.[13]  Gonzalez denied telling Shannon that Gonzalez could not work in the heat or that Gonzalez requested an assignment to an indoor position.[14] Gonzalez also denied asking Shannon for an accommodation for the heel pain.[15]  As a result of Gonzalez's complaint of heel pain,

---

[9]    See Doc. 37-10. Ex. 1-I to Def.'s Mot. for Summ. J., Statement of Aycock p. 1.

[10]    See Doc. 37-1, Ex. 1 to Def.'s Mot. for Summ. J., Aff. of Shannon p. 4.

[11]    See id.

[12]    See Doc. 37-14, Ex. 2 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 70-71.

[13]    See id. p. 71.

[14]    See id. pp. 70-71.  On the other hand, Shannon testified that Gonzalez requested that he be allowed to work indoors;  Shannon informed Gonzalez that FDSC had no indoor pipefitter jobs available.  See Doc. 37-1, Ex. 1 to Def.'s Mot. for Summ. J., Aff. of Shannon p. 4.  Id.  Shannon gave Gonzalez a Medical Certification form at that time and told him it needed to be filled out by his health care provider.  Id.  As Gonzalez is the non-movant and his testimony conflicts with Shannon's on this point, the court only considers Gonzalez's version of the encounter.

[15]    See Doc. 37-14, Ex. 2 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 72.

Shannon advised Gonzalez that if Gonzalez had a medical condition that required an accommodation, he would have to submit medical documentation supporting that accommodation.[16]   Shannon delayed implementation of Aycock's decision to terminate Gonzalez pending Gonzalez's completion of a certificate documenting a medical condition and any requested accommodations.[17]

Gonzalez saw a doctor the following day, March 14, 2015, and obtained a full release to return to work the following Monday, March 16, 2015.[18]   Gonzalez admitted that his doctor made no recommendation concerning any accommodation in the workplace to address the heel pain and that Gonzalez never requested the doctor to certify that Gonzalez had a disability.[19]

Gonzalez did not return to work at FDSC until March 24, 2015, and did not return with the medical certificate documenting a disability.[20]   Instead, Gonzalez provided the return-to-work form from his doctor that indicated that he was able to return to work on March 16, 2015, with no restrictions.[21]   The form did not refer

---

[16]    See Doc. 37-1, Ex. 1 to Def.'s Mot. for Summ. J., Aff. of Shannon p. 4.

[17]    See id.

[18]    See id.; Doc. 37-12, Ex. K to Aff. of Shannon, Doctor Certificate - Return to Work.

[19]    See Doc. 37-14, Ex. 2 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 74.

[20]    See id. pp. 76-77.

[21]    See Doc. 37-12, Ex. K to Aff. of Shannon, Doctor Certificate - Return to Work.

4

to or suggest the presence of a disabling condition or the need for an accommodation.[22]   Gonzalez was terminated upon his return by Aycock.[23]

Three days after Gonzalez was terminated by FDSC, he returned to work at Tellepsen Industrial.[24]   Gonzalez admitted he did not tell this employer that he was disabled or that he experienced heel pain.[25]

On April 6, 2015, Gonzalez filled out an Intake Questionnaire with the Equal Employment Opportunity Commission ("EEOC").[26]  In the questionnaire, he stated that, because he had neglected to eat fresh cactus and drink cold water, he experienced foot pain while working at FDSC.[27]  He further stated that, after he explained this condition to Aycock, Aycock requested an ambulance and asked Gonzalez to lie down.[28]  After Gonzalez returned from an eight-day sick leave, Gonzalez reported, "[FDSC] was already decided [sic] to

---

[22]    See id.  Gonzalez admitted at his deposition that the form did not include any limitations on his work activities.  See Doc. 37-14, Ex. 2 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 83.

[23]    See Doc. 37-14, Ex. 2 to Def.'s Mot. for Summ. J., Pl.'s Dep. p. 77.

[24]    See id. p. 110.

[25]    See id.

[26]    See Doc. 37-17, Ex. 5 to Def.'s Mot. for Summ. J., Intake Questionnaire.

[27]    See id. p. 3.

[28]    See id.

let me go."[29]  On the EEOC intake form, Gonzalez averred that he had a disability, that medication or medical equipment lessened the disability, and that, on March 24, 2015, he asked his employer for an accommodation, but Aycock denied his request and terminated his employment.[30]

On July 6, 2015, Gonzalez filed a Charge of Discrimination with the EEOC.[31]  In the charge, he complained that he was terminated after he requested reasonable accommodations for a "disability/illness."[32]

At his deposition, Gonzalez admitted that he did not have a disabling condition, that no doctor ever told him he should request an accommodation for any medical condition, and that he never requested an accommodation before he was terminated.[33]

---

[29]   See id.

[30]   See id. p. 4.

[31]   See Doc. 37-16, Ex. 4 to Def.'s Mot. for Summ. J., Charge of Discrimination.

[32]   See id. p. 1.

[33]   See Doc. 37-14, Ex. 2 to Def.'s Mot. for Summ. J., Pl.'s Dep. pp. 49, 72, 73-75, 83, 87, 89-90, 111-12. See id. pp. 50-52 (wherein Plaintiff admitted that he did not believe that any doctor gave instructions to ask for an accommodation and admitted that no manager at FDSC ever expressed a concern about Plaintiff's health or heel condition).  Several minutes after testifying that he never requested an accommodation, Gonzalez testified that it was "possible" that he had requested an accommodation but that he did not have a distinct recollection of doing so.  See id. pp. 92-95.  Later, Gonzalez again admitted that he never asked for an accommodation. See id. p. 97.

The court does not consider the equivocal statements regarding whether he may have requested an accommodation to raise a fact issue in light of the entirety of Gonzalez's deposition, which the court was required to attend due to Gonzalez's continued non-responsiveness.  Gonzalez had to be admonished to remove his headphones during the deposition. See id. pp. 5-7.  Even after the deposition reconvened in the courtroom, it was notable for Gonzalez's lack of commitment to any fact and his repeated answers of "Can you repeat the question," "It's

6

Despite Gonzalez's present litigating position is that he is not disabled but was perceived as disabled, Gonzalez admitted that no one at FDSC told him that he was limited or was perceived to be limited in his ability to work because of heel pain or any other medical condition.[34]  When asked what disability FDSC perceived him as having, Gonzalez answered, "As I said before, the company perceived that I had a medical condition that they either refused to understand or did not want to understand and they decided to terminate me because of it."[35]  When pressed on whether he had any facts to support this statement that Aycock fired him because of a perceived disability, Gonzalez stated, "I don't remember any."[36] When asked if he had any facts to support his belief that Shannon perceived him as having a disability, Gonzalez stated, "I may have some fact in my notes but I don't recollect any right now."[37] Pushed on this, Gonzalez was asked, "[Y]ou have no such facts,

---

possible," "I don't recall," and "I don't believe so." The colloquy between Gonzalez and defense counsel at page 58 is only one of many exchanges that exemplify the contrarian nature of Gonzalez's deposition.  In the exchange, Plaintiff was shown a write-up for his leaving his work area without permission. He denied that the statement was true because FDSC had not "decided" what his work area was. When directly asked if Aycock told Gonzalez that wandering off from his work area was unacceptable, Gonzalez responded, "I don't believe he said it that way, no."  To which he was asked, "He said something to that effect?" Gonzalez answered, "Possibly."  See id. pp. 61-62.

[34]    See id. pp. 51-53, 77-80, 96.

[35]    See id. p. 99.

[36]    Id.

[37]    See id. p. 100.

correct?" to which he replied, "I don't recollect."[38]

Gonzalez also agreed that Aycock terminated Gonzalez's employment because Aycock believed Gonzalez had been insubordinate and Aycock would have terminated Gonzalez even if Aycock had not known about the heel pain.[39]  Gonzalez conceded that Aycock never expressed any concern over Gonzalez's physical condition and that, on the day he returned to work and was terminated, Gonzalez was fully released to work by his physician.[40]

## B.  Procedural Background

Gonzalez filed this action on September 15, 2016, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Americans with Disabilities Act of 1990 ("ADA").[41]  In his complaint, Gonzalez complained that FDSC discriminated against him when it terminated his employment on the basis of his age, national origin and disability and failed to accommodate his disability.[42]

FDSC moved to dismiss Plaintiff's Title VII and ADEA claims based on Gonzalez's failure to raise those claims before the EEOC.[43]

---

[38]    Id.

[39]    Id.

[40]    See id. pp. 101-04, 106.

[41]    See Doc. 1, Pl.'s Compl. p. 3.

[42]    See id. p. 4.

[43]    See Doc. 12, Def.'s Mot. to Dismiss pp. 5-7

The motion also sought dismissal of Gonzalez's ADA claims based on his failure to state a claim for relief because he failed to identify the nature and extent of his disability.[44]

On November 17, 2017, the court issued a Memorandum and Recommendation proposing to grant, in part, the motion to dismiss. The court recommended dismissal of Gonzalez's national origin and age-based claims based on his failure to exhaust his administrative remedies.[45]   The court found that while Gonzalez's factual allegations were scant, they were sufficient to inform FDSC that Gonzalez claimed to suffer from heel pain, claimed to request an accommodation for that heel pain and alleged that was terminated because of his disability.[46]  On December 7, 2017, the court adopted the Memorandum and Recommendation, dismissing the Title VII and ADEA claims.[47]

Pending before the court is FDSC's Motion for Summary Judgment seeking judgment on Gonzalez's remaining ADA claims.   Gonzalez objected to FDSC's motion on the ground that the motion was longer than his work log, contained irrelevant case citations and failed to negate the fact that Aycock did not care about Gonzalez's

---

[44]        See id. pp. 8-10.

[45]        See Doc. 16, Mem. & Rec. Dated Nov. 16, 2017 p. 6.

[46]        See id. pp. 6-7.

[47]        See Doc. 18, Ord. Adopting Mem. & Rec.

medical condition.[48]  Gonzalez also filed a motion for a preliminary injunction in which he seeks to revoke his authorization for disclosure of his medical records.[49]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Stauffer v. Gearhart</u>, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  <u>Anderson</u>, 477 U.S. at 250; <u>Royal v. CCC&R Tres Arboles, L.L.C.</u>, 736 F.3d 396, 400 (5th Cir. 2013).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th

---

[48]    <u>See</u> Doc. 38, Pl.'s Obj. to Def.'s Mot. for Summ. J. pp. 1-2.

[49]    <u>See</u> Doc. 39, Pl.'s Mot. for Prelim. Inj.

Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  Id. at 324.

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts."  Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.

### III.  Analysis

The ADA prohibits employers from discriminating "on the basis of disability in regard to . . . [the] discharge of employees."  42

11

U.S.C. § 12112(a).  Discrimination against a qualified individual on the basis of disability includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.  42 U.S.C. § 12112(b)(5)(A).

### 1.  Reasonable Accommodation Claim

An employer must provide reasonable accommodations to an otherwise qualified person with a disability unless the employer can show that the accommodation "would impose an undue hardship" on the employer.  42 U.S.C. § 12112(b)(5)(A).  The employee bears the burden of requesting a reasonable accommodation.  Jenkins v. Cleco Power, LLC, 487 F.3d 309, 315 (5th Cir. 2007).  After the employee requests an accommodation, "the employer and the employee should engage in a flexible, interactive discussion to determine the appropriate accommodation."  EEOC v. Chevron Phillips Chem. Co., 570 F.3d 606, 621 (5th Cir. 2009).  Where the breakdown of the interactive process is attributable to the employer's unwillingness to make a good faith effort to reasonably accommodate a qualified employee, the employer violates the ADA.  Id.  However, the employer will not be found liable where the breakdown in the accommodation process is attributable to the employee.  Id.

In the present case, it is undisputed that Gonzalez complained

of heel pain[50] and that Shannon gave Gonzalez a medical certification form and told him to see a doctor.[51]  Gonzalez denied requesting an accommodation for his heel pain[52] and also denied that he had a disability.[53]  He returned to work with an unrestricted release to work from his doctor.  Under these undisputed facts, Gonzalez cannot complain that FDSC failed to accommodate a documented disability.  FDSC is entitled to summary judgment on Gonzalez's failure to accommodate claim.

### 2.  Termination of Employment

A plaintiff claiming a violation of the ADA must meet the burden-shifting framework of McDonnell Douglas by making a prima facie showing that (1) he is disabled; (2) he is qualified for his job; (3) he was subjected to an adverse employment action on account of his disability; and (4) that he was replaced by, or treated less favorably than, non-disabled employees.  Chevron Phillips Chem. Co., 570 F.3d at 615.  After a plaintiff has made this showing, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action.  Id.  After the employer has done so, the plaintiff must

---

[50]    See Doc. 37-14, Ex. 2 to Def.'s Mot. for Summ. J., Dep. of Pl., pp. 70-71.

[51]    See Doc. 37-1, Ex. 1 to Def.'s Mot. for Summ. J., Aff. of Shannon p. 4.

[52]    See Doc. 37-14, Ex. 2 to Def.'s Mot. for Summ. J., Dep. of Pl. p. 72.

[53]    See id. pp. 89-90, 111.

show that the employer's reason is either pretextual or that the employer's articulated reason for the adverse action was only one reason for the adverse action and the employer was also motivated to take the adverse action due to the plaintiff's disability.  Id.

Turning to the first element, Gonzalez may adduce evidence that he is disabled by showing that he: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such impairment.  Atkins v. Salazar, 677 F.3d 667, 675 (5th Cir. 2011).  Gonzalez alleges that he was regarded as having an impairment.

Gonzalez's subjective belief that FDSC regarded him as having an impairment is not enough; he must have evidence to raise a fact issue that FDSC perceived him as having a disability.  See Deas v. River W., L.P., 152 F.3d 471, 476 n. 9 (5th Cir. 1998)("Under the 'regarded as' prong, the disability status of the plaintiff turns not on the plaintiff's physical condition, but rather on how the plaintiff was perceived and treated by those individuals alleged to have taken discriminatory action.").

At his deposition, Gonzalez did nothing more than assert that FDSC believed he had a medical condition that FDSC did not understand and terminated him because of it.[54]  When asked to support this statement with facts that Aycock fired Gonzalez

---

[54]   See Doc. 37-14, Ex. 2 to Def.'s Mot. for Summ. J., Dep. of Pl. p. 99.

because of a perceived disability, he stated, "I don't remember any."[55]  In fact, according to Shannon, the only thing that kept Shannon from following through with Aycock's demand that Gonzalez be terminated for insubordination on March 13, 2015, was Shannon's concern that Gonzalez had a medical condition that might excuse his insubordination.[56]  When Gonzalez returned to work after an unexplained eight-day absence and with no medical explanation for his insubordination, he was terminated.  The court concludes that Gonzalez cannot raise a fact issue that FDSC perceived him as disabled.

Even if the court were to consider that Gonzalez could raise a fact issue that he was perceived as disabled by FDSC and could satisfy the remaining prongs of a prima facie case, FDSC has offered a legitimate non-discriminatory reason for Gonzalez's termination, that is, his insubordination to Aycock on March 13, 2015.  FDSC has met its burden to show that it had a legitimate, non-discriminatory reason for its decision to terminate Gonzalez, and the onus shifts to Gonzalez to show that FDSC's reason for terminating him was either pretextual or motivated by his disability.

Here, Gonzalez cannot raise a fact issue of pretext.  In his deposition, he admitted that Aycock terminated his employment

---

[55]    See id.

[56]    See Doc. 37-1, Ex. 1 to Def.'s Mot. for Summ. J., Aff. of Shannon p. 4.

because Aycock believed that Gonzalez had been insubordinate and that Aycock would have terminated Gonzalez even if Aycock had not known about Gonzalez's heel pain.[57]   Gonzalez agreed that Aycock, the decision-maker, never expressed concern over Gonzalez's physical condition.[58]   The court concludes that Gonzalez has failed to raise a triable issue that he was terminated because he was perceived as disabled.

### 3.   Motion for Preliminary Injunction

On July 18, 2018, Gonzalez moved for injunctive relief against FDSC's alleged failure to honor the last paragraph of a medical release Gonzalez signed on May 7, 2018.  That release pertained to Gonzalez's medical records from January 1, 2014, to the present. It contained a provision that called for the expiration of the release after one year unless the release was revoked in writing. On June 20, 2018, Gonzalez revoked the medical release in writing.

In response, FDSC stated that, on May 8, 2018, the court ordered Gonzalez to provide FDSC with a notarized medical release, which, to date, Gonzalez has not done.  FDSC asks that the court deny Plaintiff's motion.

Plaintiff may not circumvent the court's May 8, 2018 order by revoking his medical release.   That said, if the court's

---

[57]    See Doc. 37-14, Ex. 2 to Def.'s Mot. for Summ. J., Dep. of Pl. p. 100.

[58]    See id.

16

recommendation is adopted, the issue of Gonzalez's production of medical records is moot.   Accordingly, it is **RECOMMENDED** that Plaintiff's Motion for Injunctive Relief be **DENIED AS MOOT.**

### IV.   Conclusion

It is therefore **RECOMMENDED** that FDSC's motion for Summary Judgment be **GRANTED** and that Gonzalez's Motion for Injunctive Relief be **DENIED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.   Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 22nd day of January, 2019.

_____
U.S. MAGISTRATE JUDGE

17